**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 20-7797**

UNITED STATES OF AMERICA,

  Petitioner – Appellee,

  v.

GARY CURBOW,

  Respondent – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  W. Earl Britt, Senior District Judge.  (5:19-hc-02218-BR)

Argued:  May 6, 2021                                  Decided:  October 19, 2021

Before KING and THACKER, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by published opinion.  Judge King wrote the opinion, in which Judge Thacker and Senior Judge Traxler joined.  Judge Thacker wrote a concurring opinion.  Senior Judge Traxler wrote a concurring opinion.

**ARGUED:**  Jennifer Claire Leisten, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Genna Danelle Petre, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  G. Norman Acker, III, Acting United States

Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————————

KING, Circuit Judge:

After shooting at military helicopters flying over his Mississippi farm, respondent Gary Curbow was charged in the Northern District of Mississippi with committing a federal criminal offense. The Mississippi district court deemed Curbow to be mentally incompetent to stand trial and temporarily placed him in the custody of the Attorney General for further evaluation of his mental condition. Staff members at the Federal Medical Center at Butner, North Carolina ("FMC Butner"), eventually concluded that Curbow was unlikely to be restored to competency in the foreseeable future and that his mental condition rendered him dangerous to others. The Government then filed a certificate in the Eastern District of North Carolina — as the district where FMC Butner is located — attesting that Curbow was a dangerous person who should be civilly committed. Following an evidentiary hearing, the North Carolina district court agreed and ordered Curbow's civil commitment.

In this appeal from the judgment of the North Carolina court, Curbow does not dispute that there was ample evidence before the court of his dangerousness. Rather, Curbow principally argues that he was ineligible for civil commitment under this Court's recent decision in *United States v. Wayda*, 966 F.3d 294 (4th Cir. 2020), because the Attorney General no longer had legal custody of him at the time of his dangerousness certification. As explained herein, we reject that argument for being without merit in part and waived in other part. We also reject Curbow's additional grounds for challenging his civil commitment. Consequently, we affirm the North Carolina court's judgment.

3

I.

A.

As we did in our *Wayda* decision, we begin with a discussion of the governing statutory framework, which encompasses §§ 4241, 4246, and 4248 of Title 18 of the United States Code. Here, the more relevant statutes are §§ 4241 and 4246. In *Wayda*, they were §§ 4241 and 4248.

1.

Section 4241 spells out the process for determining whether a federal criminal defendant is competent to stand trial. In pertinent part, after criminal charges are brought, "the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant." *See* 18 U.S.C. § 4241(a). The court must award such a hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id.* Prior to the competency hearing, "the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court." *Id.* § 4241(b).

Following the hearing, if "the court finds by a preponderance of the evidence that the defendant is [mentally incompetent to stand trial], the court shall commit the defendant to the custody of the Attorney General." *See* 18 U.S.C. § 4241(d). Thereafter, "[t]he

Attorney General shall hospitalize the defendant for treatment in a suitable facility." *Id.*

Such hospitalization and treatment are to be:

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future [the defendant] will attain the capacity to permit the proceedings to go forward; and

(2) for an additional reasonable period of time until —

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

(B) the pending charges against him are disposed of according to law;

whichever is earlier.

*Id.*

Finally, "[i]f, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248." *See* 18 U.S.C. § 4241(d). "Sections 4246 and 4248," as we explained in *Wayda*, "govern the federal process for civil commitment of particular persons in the government's custody whose mental condition renders them a potential threat." *See* 966 F.3d at 297.

### 2.

#### a.

Section 4246 (a statute more relevant here) provides for the civil commitment of a hospitalized person who "is presently suffering from a mental disease or defect as a result

5

of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." *See* 18 U.S.C. § 4246(a). Pursuant to the statutory framework, an evaluation under § 4246 for dangerousness is materially different from an evaluation under § 4241 for competency to stand trial. Whereas the § 4241 evaluation concerns a criminal defendant's ability to comprehend and participate in his own court proceedings, the § 4246 evaluation relates to a person's dangerousness to others.

To civilly commit a person pursuant to § 4246, the director of the facility in which the person is hospitalized must certify that the person is dangerous "and that suitable arrangements for State custody and care of the person are not available." *See* 18 U.S.C. § 4246(a). Significantly, a hospitalized person is subject to § 4246(a) dangerousness certification in only three circumstances. That is, the person must be one of the following: (1) "a person in the custody of the Bureau of Prisons whose sentence is about to expire"; (2) a criminal defendant "who has been committed to the custody of the Attorney General pursuant to section 4241(d)"; or (3) a person "against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person." *Id.*

Once the facility director has certified that a hospitalized person is dangerous, the certificate must be transmitted "to the clerk of the court for the district in which the person is confined." *See* 18 U.S.C. § 4246(a). At that point, the person's release is stayed pending completion of the § 4246 proceedings. *Id.* As part of those proceedings, the district court must order a hearing to determine whether the person satisfies § 4246's standards for dangerousness. *Id.* § 4246(a), (c). The court also may order a psychiatric or psychological examination. *Id.* § 4246(b). Following the hearing, if "the court finds by clear and

6

convincing evidence that the person is [dangerous], the court shall commit the person to the custody of the Attorney General." *Id.* § 4246(d). Section 4246 delineates the Attorney General's responsibilities with regard to the custody of a civilly committed person, as well as the requirements for the person's release, including possible conditional release. *Id.* § 4246(d)-(g).

b.

Meanwhile, § 4248 (a statute more relevant in *Wayda*) provides for the civil commitment of "a sexually dangerous person." *See* 18 U.S.C. § 4248(a). Such a person is one "who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others." *Id.* § 4247(a)(5). A person is "sexually dangerous to others" if he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." *Id.* § 4247(a)(6).

Somewhat different from § 4246's certification procedures, § 4248 empowers "the Attorney General or any individual authorized by the Attorney General or the Director of the Bureau of Prisons" to "certify that the person is a sexually dangerous person." *See* 18 U.S.C. § 4248(a). There are just three circumstances in which a person may be certified as sexually dangerous under § 4248(a), and they are nearly identical to the three circumstances in which a person may be certified as dangerous under § 4246(a). Specifically, § 4248(a) authorizes certification of: (1) "a person who is in the custody of the Bureau of Prisons"; (2) a criminal defendant "who has been committed to the custody of the Attorney General pursuant to section 4241(d)"; and (3) a person "against whom all

7

criminal charges have been dismissed solely for reasons relating to the mental condition of the person." The circumstance at issue both here and in *Wayda* — authorizing the civil commitment of a criminal defendant "who has been committed to the custody of the Attorney General pursuant to section 4241(d)" — is set forth in exactly the same language in §§ 4246(a) and 4248(a).

Similar to § 4246, § 4248 requires transmission of "the certificate to the clerk of the court for the district in which the person is confined," prompting a stay of the person's release pending proceedings that include a mandatory hearing, an optional psychiatric or psychological examination, and a disposition by the district court. *See* 18 U.S.C. § 4248(a)-(d). Following the hearing, if "the court finds by clear and convincing evidence that the person is a sexually dangerous person, the court shall commit the person to the custody of the Attorney General." *Id.* § 4248(d) (echoing § 4246(d)). Also like § 4246, § 4248 outlines the Attorney General's custody responsibilities and the requirements for the civilly committed person's release. *Id.* § 4248(d)-(g).

B.

We next provide an overview of our *Wayda* decision, wherein respondent Sean Michael Wayda was a criminal defendant in the District of Maryland who was charged with multiple federal sex offenses. *See* 966 F.3d at 298-99. On the Government's motion, the Maryland district court ordered an evaluation under 18 U.S.C. § 4241(b) and a hearing pursuant to § 4241(a) regarding Wayda's mental competency to stand trial. *Id.* at 298. Following the hearing, the court found Wayda to be incompetent and directed the Attorney General to hospitalize Wayda under § 4241(d)(1) "for a reasonable period of time, not to

8

exceed four months from the defendant's arrival at the medical facility, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed." *Id.* at 299. That directive incorporated the four-month limitation expressly contained in § 4241(d)(1).

Six months passed with no report on Wayda's restorability, prompting the Maryland court to prod the parties and eventually conduct a second competency hearing, now at Wayda's request. *See Wayda*, 966 F.3d at 299. Following the second hearing, the court determined that Wayda remained incompetent but that there was a substantial probability he would be restored to competency in the foreseeable future. *Id.* Consequently, the court ordered Wayda's continued hospitalization for another "reasonable period of time, not to exceed four months." *Id.* The court apparently intended the additional period of hospitalization to be in accordance with § 4241(d)(2), though § 4241(d)(2), unlike § 4241(d)(1), does not contain an express four-month limitation.

Ten more months passed, and Wayda was then afforded a third set of competency hearings. *See Wayda*, 966 F.3d at 299. Five months later, the Maryland court entered a written order memorializing the court's rulings that Wayda remained mentally incompetent to stand trial and that there was not a substantial probability that he could be restored to competency in the foreseeable future. *Id.* at 299-300. Within the next week, the court ordered that Wayda be committed to the custody of the Attorney General to ascertain whether he should be civilly committed as a dangerous person under 18 U.S.C. § 4246 or as a sexually dangerous person under 18 U.S.C. § 4248. *Id.* at 300. The court did not specify a time limit for that period of custody.

9

Six months after the Maryland court's unrestorability determination, the Government certified that Wayda was a sexually dangerous person under § 4248. *See Wayda*, 966 F.3d at 300. The § 4248 certificate was filed in the Eastern District of North Carolina, as Wayda was being confined at FMC Butner. *Id.* Wayda moved to dismiss the certificate under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Id.* He asserted that, when the certificate was filed, he did not qualify under § 4248(a) as a person who may be certified as sexually dangerous. *Id.*

The North Carolina district court focused on the only circumstance in which Wayda was arguably eligible under § 4248(a) for certification: being a criminal defendant who had "been committed to the custody of the Attorney General pursuant to section 4241(d)." *See Wayda*, 966 F.3d at 301. As the court saw it, there were two periods wherein Wayda was in the Attorney General's custody under § 4241(d). The first was the four-month period following the Maryland court's initial finding (after the first competency hearing) that Wayda was mentally incompetent to stand trial, when the court ordered Wayda's hospitalization under § 4241(d)(1) for a restorability evaluation. The second was the four-month period following the court's subsequent findings (following the second competency hearing) that Wayda remained incompetent but that there was a substantial probability he could be restored to competency in the foreseeable future; at that time, the court ordered Wayda's continued hospitalization under § 4241(d)(2).

Having calculated that more than two years passed between the expiration of the first period and the filing of the § 4248 certificate, and more than 16 months passed

10

between the second period's expiration and the certificate's filing, the North Carolina court reasoned that the certificate when filed "was well-stale under either of the District of Maryland's [§ 4241(d) commitment] orders." *See Wayda*, 966 F.3d at 301 (alteration in original). Accordingly, the North Carolina court granted Wayda's motion to dismiss the § 4248 certificate as untimely. *Id.* at 300.

In the Government's appeal, we agreed with the North Carolina court that — where, as in Wayda's case, § 4248(a) eligibility for certification depends on being a criminal defendant in the Attorney General's custody under § 4241(d) — "a § 4248 certificate filed against a defendant who is no longer legally committed to the Attorney General's custody is untimely." *See Wayda*, 966 F.3d at 305. In other words, "§ 4248 certification must occur during the Attorney General's time-limited custody over [a defendant]." *Id.* "[T]he custodial authority over a defendant need be active and legitimate for § 4248 to apply." *Id.* at 304.

Nevertheless, we identified a different, third period that was "the crucial window of time for our analysis" of whether Wayda's § 4248 certificate was timely. *See Wayda*, 966 F.3d at 303. That period covered the six months between the Maryland court's unrestorability determination (by the written order entered after the third set of competency hearings) and the filing of the § 4248 certificate. We recognized that Wayda's custody during that period was necessarily ordered pursuant to § 4241(d)(2)(B). *Id.* Thus, Wayda "could only be considered properly in the custody of the Attorney General 'for an additional reasonable period of time until . . . the pending charges against him [were] disposed of according to law.'" *Id.* (quoting 18 U.S.C. § 4241(d)(2)(B)).

11

In focusing on the third time period, we recognized that "[e]ven excusing the multiple earlier lapses of four-month periods that were the focus of the district court's dismissal order," the § 4248 certificate was untimely if the period between the unrestorability determination and the certificate's filing exceeded reasonable bounds. *See Wayda*, 966 F.3d at 303. For "[e]ven if the delays prior to the [unrestorability determination were] explainable and the periods of those delays were reasonable, [Wayda's] continued confinement between the [unrestorability determination] and the § 4248 certificate's filing must also [have been] limited to a reasonable period." *Id.*

Our review of the record led us to conclude that Wayda's "ongoing hospitalization went beyond 'an additional reasonable period of time'" and therefore "the § 4248 certificate was not properly submitted for a person committed to the custody of the Attorney General pursuant to § 4241(d)." *See Wayda*, 966 F.3d at 306 (quoting 18 U.S.C. § 4241(d)(2)(B)). In reaching that conclusion, we recognized that

> [w]hen the government has in its custody an individual whose incapacity renders him unable to stand trial and therefore eventually subject either to possible release or civil commitment, we expect the government to "strive to certify" individuals in a time frame that eliminates or at least minimizes the time spent as an incompetent, unrestorable person waiting for [a § 4246 or] a § 4248 determination.

*Id.* at 308 (quoting *United States v. Timms*, 664 F.3d 436, 453 n.14 (4th Cir. 2012)). We further explained that the time period "should not be so short as to not accord the government reasonable time to seek and file certification of a person pursuant to §§ 4246 or 4248, but it should only be so long as to allow for reasonable explainable administrative delays in that certification process." *Id.*

12

In Wayda's case, we determined that the six-month gap between the unrestorability determination and the § 4248 certificate's filing "was not reasonable" because "[t]he Government did not provide an adequate explanation of any physical, behavioral, or administrative obstacles to [its] evaluation of [Wayda] or the filing of the § 4248 certification." *See Wayda*, 966 F.3d at 308. We also observed that there is just a four-month window to make an initial restorability determination under § 4241(d)(1) and that there was "no reason why a period one-and-a-half times as long [was] needed to [file the § 4248 certificate following the unrestorability determination]." *Id.* At bottom, "[n]othing in the record or arguments before us explain[ed] how the six month delay . . . could be justified by the Government's need to complete the § 4248 analysis of a person who ha[d] been under their complete control for the previous two years." *Id.* at 309.

In those circumstances, we affirmed the judgment of the North Carolina court, dismissing the § 4248 certificate as untimely. *See Wayda*, 966 F.3d at 309. Notably, however, we declined to rule whether § 4248(a)'s eligibility provisions are subject matter jurisdictional, as that question was "not squarely before us [or] essential to our decision." *Id.* at 302 n.6; *see also United States v. Welsh*, 879 F.3d 530, 535 (4th Cir. 2018) (expressing doubt that § 4248(a) eligibility provision is subject matter jurisdictional without unnecessarily deciding issue).

C.

We turn to a fuller recitation of the factual and procedural history of the proceedings involving Curbow, starting with those in Mississippi.

13

1.

In February 2018, a criminal complaint was lodged against Curbow in the Northern District of Mississippi for attempting to damage or destroy an aircraft operating in the special aircraft jurisdiction of the United States, in contravention of 18 U.S.C. § 32. *See United States v. Curbow*, No. 3:18-mj-00014 (N.D. Miss. Feb. 27, 2018), ECF No. 1. The charged offense carries a sentence of up to 20 years in prison.

According to the supporting affidavit of an FBI agent who interviewed Curbow, military helicopters had recently been flying low over Curbow's farm and Curbow had "shot at the helicopters on at least five occasions, using a 12-gauge automatic Remington shotgun." *See United States v. Curbow*, No. 3:18-mj-00014, at 2 (N.D. Miss. Feb. 27, 2018), ECF No. 1-1. Curbow claimed that the helicopters had killed some of his "livestock by shooting them with lasers which [had] also temporarily blinded [Curbow]." *Id.* Additionally, Curbow asserted that the Army had "used a satellite hookup to send signals to choke [him] while he was eating and . . . dropped methamphetamine on his property." *Id.* Curbow told the FBI agent that he "shot at the helicopters because he has the right to 'protect his property and wildlife.'" *Id.* Curbow previously told a sheriff's deputy responding to a report of Curbow shooting at helicopters that "'if y'all do not want me shooting, you should make the helicopters quit dropping drugs at my house.'" *Id.* at 1 (also relaying Curbow's allegation to the deputy that "one helicopter had tried to fly into the window of his pick-up truck"). One of Curbow's neighbors advised the same deputy that "every time a helicopter flies over their properties, [Curbow] shoots at it at least three

14

times." *Id.* That neighbor and two others expressed that "they were fearful of what [Curbow] could possibly be capable of." *Id.*

2.

After the criminal complaint was lodged against Curbow, the Mississippi court appointed the Federal Public Defender for the Northern District of Mississippi to represent him. The court also entered four orders under which Curbow was placed in the Attorney General's custody for evaluations of his mental competency, restorability, and dangerousness. Those orders were sealed in the Mississippi proceedings, and none of the orders were provided to the North Carolina court and made part of the North Carolina record. As such, we have gleaned the orders' contents from the public portions of the Mississippi court's docket, the North Carolina court's description of the orders based on counsel's representations to that court, other materials in the North Carolina record, and counsel's representations to us. Significantly, there is no indication that Curbow raised any objection in the Mississippi court to any of the orders, including any challenge to the court's continuing authority to enter the orders or the duration of his custodial hospitalization.

a.

On March 1, 2018, on the joint motion of Curbow and the Government, the Mississippi court ordered an evaluation of Curbow's mental competency to stand trial,

15

pursuant to 18 U.S.C. § 4241.[1]  The § 4241(b) evaluation was conducted at FMC Butner in North Carolina.  The FMC Butner evaluators' report was submitted to the court on June 18, 2018, and the court thereafter conducted a § 4241(a) competency hearing on July 26, 2018.

b.

Following the July 26, 2018 hearing, by an order entered that same day, the Mississippi court ruled that Curbow was mentally incompetent to stand trial.  Pursuant to § 4241(d)(1), the order committed Curbow to the custody of the Attorney General for a period not to exceed four months to determine whether there was a substantial probability that Curbow would be restored to competency in the foreseeable future.  The order also called for an assessment of Curbow's dangerousness under 18 U.S.C. § 4246.

On August 22, 2018, Curbow was readmitted to FMC Butner for the court-ordered evaluation.  FMC Butner's warden wrote to the Mississippi court on August 28, 2018, advising that Curbow was in custody at FMC Butner and that the facility's staff members "calculated the [§ 4241(d)(1)] evaluation period to end December 19, 2018," i.e., 120 days after Curbow's admission.  *See* J.A. 66.[2]  The warden stated that his staff would "attempt

---

[1] The Mississippi court concomitantly ordered an evaluation of Curbow's mental state at the time of the charged offense, pursuant to 18 U.S.C. § 4242.  That statute provides that where a criminal defendant files a notice that he "intends to rely on the defense of insanity, the court, upon motion of . . . the Government, shall order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court."  *See* 18 U.S.C. § 4242(a).

[2] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

16

to complete the evaluation as soon as possible and have a final report to the Court within 14 working days of the end date." *Id.*

The FMC Butner evaluators issued their report on December 19, 2018. The report reflects that the evaluators diagnosed Curbow with schizophrenia and opined that he required further treatment to be restored to competency. The report did not discuss Curbow's dangerousness. The report was filed with the Mississippi court on January 11, 2019.

c.

By order of January 24, 2019, the Mississippi court found that Curbow remained mentally incompetent to stand trial but that there was a substantial probability he would be restored to competency in the foreseeable future. Invoking § 4142(d)(2), the order committed Curbow to the custody of the Attorney General for an additional reasonable period of time, which the court (but not the statute) defined as a period of no more than four months.

About four months and two weeks later, on June 6, 2019, the FMC Butner evaluators reported to the Mississippi court that Curbow was yet mentally incompetent to stand trial and that it now appeared he was not likely to be restored to competency in the foreseeable future. The evaluators requested 30 more days to assess Curbow and sought clarification as to the focus of their evaluation.

d.

That same day, June 6, 2019, the Mississippi court entered an order, apparently under § 4241(d)(2), granting a 30-day period to further evaluate Curbow. *See* 18 U.S.C.

17

§ 4247(b) ("For the purposes of an examination pursuant to an order under section 4241, . . . the court may commit the person to be examined for a reasonable period, but not to exceed thirty days."). As the FMC Butner evaluators understood the order, they were to assess both Curbow's restorability and dangerousness. The evaluators notified the court of their intent to submit a report "within 14 business days of the study end date to allow for internal review and routing procedures." *See* J.A. 159 (sealed).

The resulting report is dated July 5, 2019, and was signed on July 12, 2019. Therein, the report's signatory — a forensic psychologist who served as one of the evaluators — reiterated the view that Curbow remained mentally incompetent to stand trial and that there was not a substantial likelihood he would be restored to competency in the foreseeable future. With respect to Curbow's dangerousness, the signatory opined that Curbow satisfied the definition of a dangerous person in § 4246, in that he was "presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." *See* 18 U.S.C. § 4246(a). The signatory thus recommended that Curbow be certified as meeting § 4246's requirements for civil commitment.

FMC Butner's warden adopted that recommendation and on July 17, 2019, completed the § 4246 certificate attesting to Curbow's dangerousness, as well as to the unavailability of suitable arrangements for his state custody and care. The warden forwarded the § 4246 certificate and the July 2019 report to the United States Attorney for the Eastern District of North Carolina, who filed the certificate in the North Carolina court on July 25, 2019.

18

D.

We now discuss Curbow's civil commitment proceedings in North Carolina, from which this appeal was taken.

1.

The Government's filing of the 18 U.S.C. § 4246 certificate on July 25, 2019, initiated the North Carolina proceedings and stayed Curbow's release from custody. On July 30, 2019, the North Carolina court appointed the Federal Public Defender for the Eastern District of North Carolina to represent Curbow. The court also scheduled a civil commitment hearing for October 28, 2019. Upon the request of Curbow's counsel for a continuance, the hearing was subsequently rescheduled to February 24, 2020.

On February 5, 2020, Curbow filed a motion to dismiss the § 4246 certificate under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Curbow argued that, when the certificate was filed, he did not qualify under § 4246(a) as a person who may be certified as dangerous. That argument was similar to the argument made by the *Wayda* respondent under the analogous provision of 18 U.S.C. § 4248(a). By that time, Wayda had prevailed in the same North Carolina court (before a different district judge) and the Government's appeal was pending.

Five days after Curbow filed his motion to dismiss, on February 10, 2020, the Government requested the North Carolina court to place Curbow's proceedings in abeyance until resolution of the appeal in *Wayda*. The court granted the Government's motion over Curbow's objection. We rendered our *Wayda* decision on July 27, 2020, and

19

the mandate issued on September 18, 2020.  In the interim, Curbow and the Government briefed the North Carolina court on the impact of our *Wayda* decision.

2.

By its order of September 28, 2020, the North Carolina court denied Curbow's motion to dismiss the § 4246 certificate.  *See United States v. Curbow*, No. 5:19-hc-02218 (E.D.N.C. Sept. 28, 2020), ECF No. 22 (the "Denial Order").

a.

Consistent with the governing statutory framework, the North Carolina court recognized in its Denial Order that there are three circumstances in which a person is subject to § 4246 certification:  being "a person in the custody of the Bureau of Prisons whose sentence is about to expire," a criminal defendant "who has been committed to the custody of the Attorney General pursuant to [18 U.S.C. §] 4241(d)," or a person "against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person."  *See* 18 U.S.C. § 4246(a).  As was similarly done in *Wayda*, the court focused on whether Curbow had been in the § 4241(d) custody of the Attorney General when the § 4246 certificate was filed, as that was the only circumstance in which Curbow was arguably eligible for dangerousness certification.  *See* Denial Order 4.

The North Carolina court accepted that there were three periods in which Curbow was in custody under § 4241(d) — assuming that a lapse in one period of custody did not deprive the Mississippi court of authority to order a subsequent period of custody.  *See* Denial Order 5-10.  In the first of those periods, Curbow was in § 4241(d)(1) custody for a restorability evaluation upon the Mississippi court's July 26, 2018 ruling that he was

20

mentally incompetent to stand trial. In the second, Curbow was in § 4241(d)(2) custody for further assessment of his restorability upon the Mississippi court's January 24, 2019 finding that he remained incompetent to stand trial but that there was a substantial probability he would be restored to competency in the foreseeable future. And in the third, Curbow was in § 4241(d)(2) custody upon the FMC Butner evaluators' June 6, 2019 report that he was not likely to be restored to competency in the foreseeable future; by its order of that same day, the Mississippi court accorded 30 days to further evaluate Curbow. The Government then filed Curbow's § 4246 certificate on July 25, 2019.

b.

With guidance from our *Wayda* decision, the North Carolina court examined whether the third period of Curbow's § 4241(d) custody — the period comparable to the crucial period in *Wayda* — went beyond a reasonable time before the § 4246 certificate's filing. *See* Denial Order 8-9. That is, the court assessed whether the period between Curbow's June 6, 2019 unrestorability determination and the July 25, 2019 filing of his § 4246 certificate exceeded reasonable bounds. *Id.* If so, the court would have been constrained by *Wayda* to conclude that Curbow was not in legal custody when the § 4246 certificate was filed and to dismiss the certificate as untimely. *See Wayda*, 966 F.3d at 308-09 (affirming dismissal of Wayda's § 4248 certificate because six-month gap between unrestorability determination and certificate's filing was unreasonable).[3]

---

[3] Whereas there was a court determination of unrestorability in *Wayda*, Curbow's unrestorability determination was made by the FMC Butner evaluators but not explicitly adopted by the Mississippi court in its contemporaneous June 6, 2019 order. As the North (Continued)

(1)

Regarding the reasonableness of the 49-day gap between Curbow's June 6, 2019 unrestorability determination and the July 25, 2019 filing of his § 4246 certificate, the Government's evidence included the FMC Butner evaluators' report of July 5, 2019. That extensive, 12-page report began by providing background on Curbow's alleged criminal conduct, his Mississippi court proceedings, and his prior evaluations at FMC Butner for competency and restorability. The report then outlined the evaluation that was conducted following the unrestorability determination and the Mississippi court's June 6, 2019 order allowing 30 days to further assess Curbow's mental condition. Specifically, the report identified the evaluators, their areas of expertise, and the evaluation procedures. The report also detailed the most-recent state of Curbow's mental and physical health, his ongoing participation in competency restoration efforts, his adjustment to being institutionalized, his diagnosis of schizophrenia, and other diagnoses considered. From there, the report provided an updated forensic assessment of Curbow's restorability, along with the opinion that it remained unlikely that Curbow would be restored to competency in the foreseeable future. Finally, the report provided a new and distinct forensic assessment of Curbow's

---

Carolina court recognized, however, there was no suggestion that "the Mississippi court in fact found [Curbow] substantially likely to attain capacity under § 4241(d)(2)(A)." *See* Denial Order 9. Thus, similar to the circumstances in *Wayda*, the Mississippi court committed Curbow to further custody pursuant to § 4241(d)(2)(B), and the Government "was required to certify [Curbow as dangerous], if at all, within a reasonable period of time of [June 6, 2019]." *Id.*

22

dangerousness, culminating in the first-time opinion that Curbow was sufficiently dangerous to warrant civil commitment under § 4246.

The Government proffered that the July 5, 2019 report was provided to FMC Butner's warden following its completion and that the warden then "reviewed the documentation and confirmed with FMC Butner Social Work staff that no suitable state placement was available for [Curbow]." *See* J.A. 45. The Government emphasized that the warden was obliged to "thoughtfully consider all the factors at hand to determine whether [Curbow] should be [civilly] committed" — a decision that in all cases "requires thorough and attentive review of the record at hand." *Id.* at 57. The Government elaborated that the warden must be particularly concerned with public safety and accorded sufficient time to "take into account the threat potentially posed to the community." *Id.* (quoting *Wayda*, 966 F.3d at 307, wherein we recognized that because a "central motivating factor[]" behind §§ 4241(d), 4246, and 4248 is "protection of the public," the "'reasonable' amount of a time a person may be further hospitalized after incompetency and unrestorability findings must . . . take into account the threat potentially posed to the community").

As the Government explained, after reviewing the record and concluding that Curbow was a dangerous person who should be civilly committed, FMC Butner's warden proceeded to sign Curbow's § 4246 certificate on July 17, 2019, and submit it to the United States Attorney. The United States Attorney's office then conducted its own review of the record before filing the § 4246 certificate in the North Carolina court on July 25, 2019. According to the Government, it thereby had "a reasonable explanation for the entire period of time utilized in certifying [Curbow]." *See* J.A. 56; *see also id.* at 58-59 (asserting that

23

"[t]o find otherwise would imply that the [Government] must certify a respondent for civil commitment without reviewing the relevant information, asking appropriate follow-up questions where necessary, and ensuring that state placement is not available").[4]

(2)

In reply to the Government, Curbow argued, inter alia, that it was unreasonable for the Government to request "an additional 30 days to consider dangerousness" upon his June 6, 2019 unrestorability determination. *See* J.A. 72. Curbow further contended that "[t]he continued delay from the time of [the July 5, 2019] report to the July 25, 2019 filing of [the §] 4246 certificate [was] unreasonable, particularly in light of the previous sixteen plus months [he] spent in government custody." *Id.* at 73.

On the evidence before it, however, the North Carolina court concluded in its Denial Order that the 49-day duration of that period of custody — from the unrestorability determination to the § 4246 certificate's filing — was reasonable. *See* Denial Order 8-10. The North Carolina court recognized that the Mississippi court authorized the 30 days to further evaluate Curbow and that the staff at FMC Butner complied with the court's deadline by completing its report on the 29th day. *Id.* at 10. With respect to the activity

---

[4] In a 28 U.S.C. § 1746 declaration of November 3, 2020, that the Government submitted to the North Carolina court following entry of its Denial Order, an FMC Butner official addressed why the evaluators' report was completed on July 5, 2019, but not signed until July 12, 2019. That is, the signatory first had to submit the report for review and possible correction "by the Chief and/or Deputy Chief of Psychology" — and at the time "there was not a Chief of Psychology" and thus "only the Deputy Chief of Psychology would have been available to review reports and approve them for release." *See* J.A. 113-14. The declaration explained that because "FMC Butner completes over 200 evaluations in a year, this is a considerable task for one person to complete." *Id.* at 114.

over the next 20 days, the North Carolina court observed that FMC Butner's warden reviewed the report and prepared the § 4246 certificate "within two weeks of the report's completion," and that the United States Attorney reviewed the relevant materials and filed the § 4246 certificate "within a week of that." *Id.* at 9.

According to the North Carolina court, the evidence reflected that "the government did strive to certify [Curbow] in a manner that minimized the delay between [the June 6, 2019 unrestorability determination and the July 25, 2019] certificate filing." *See* Denial Order 10. The court specified that "[t]he time period elapsed in this case allowed for administrative delays and was reasonable under these facts." *Id.* In rendering that ruling, the court relied on *Wayda* for the proposition that "[t]he reasonable period of time allowed 'should not be so short as to not accord the government reasonable time to seek and file certification of a person.'" *Id.* at 9 (quoting *Wayda*, 966 F.3d at 308). The court also invoked *Wayda*'s guidance that the "time period may include 'reasonable explainable administrative delays in [the] certification process,' but the government must 'strive to certify individuals in a time frame that eliminates or at least minimizes the time spent as an incompetent, unrestorable person waiting for a [§ 4246] determination.'" *Id.* (alterations in original) (quoting *Wayda*, 966 F.3d at 308).

Notably, the North Carolina court recognized that if the dangerousness component of the evaluation had approached unreasonable lengths, the Government could have been obliged to proceed with the § 4246 certification before the dangerousness evaluation was complete. *See* Denial Order 9-10; *see also* 18 U.S.C. § 4246(b) (allowing the civil commitment court to order a psychiatric or psychological examination after the § 4246

25

certificate is filed and "[p]rior to the date of the [civil commitment] hearing"). The court also indicated that it may sometimes be prudent for the Government to conduct a dangerousness evaluation even before an unrestorability determination is made. In the words of the court, "in some circumstances, the government may and should proceed with a § 4246 assessment or certification during a respondent's § 4241(d) commitment period" because "[t]he legitimacy of the Attorney General's custody lasts only for a reasonable period beyond a finding of unrestorability." *Id.* That was not necessary in Curbow's case, however, because the court determined that his dangerousness evaluation was completed within a reasonable timeframe following his unrestorability determination. *Id.* at 10.

c.

The North Carolina court separately assessed in its Denial Order whether Curbow was ineligible for § 4246 certification as the result of an unreasonable delay in his first or second period of § 4241(d) custody. *See* Denial Order 6-8. Our *Wayda* decision offered limited guidance on that issue, as it was unnecessary in *Wayda* to decide if unreasonable delays in the comparable periods of Wayda's custody disqualified him from 18 U.S.C. § 4248 certification.

Although Curbow acknowledged that *Wayda* "simply did not need to reach [the effect of the delays in the first two periods of Wayda's § 4241(d) custody] in light of the unreasonableness of the delay [in the third]," Curbow suggested that *Wayda* established a test under which an unreasonable delay in any period of § 4241(d) custody irrevocably ends the Attorney General's legal custody over the defendant and renders him ineligible for subsequent § 4246 or § 4248 certification. *See* J.A. 69. In so suggesting, Curbow

26

pointed to *Wayda*'s observation that "[e]ven if the delays prior to the [unrestorability determination were] explainable and the periods of those delays were reasonable, [Wayda's] continued confinement between the [unrestorability determination] and the § 4248 certificate's filing must also [have been] limited to a reasonable period." *See* 966 F.3d at 303. Curbow argued that there were unexplained and unreasonable delays in his first and second periods of § 4241(d) custody that disqualified him from § 4246 certification, regardless of the reasonableness of the delay in his third period of § 4241(d) custody.

Curbow specified that his first period of custody exceeded the four-month window explicitly allowed by the statute and that the second violated the Mississippi court's chosen four-month deadline. According to Curbow, the first period began on July 26, 2018, when the Mississippi court ruled him mentally incompetent to stand trial and ordered a restorability evaluation; his § 4241(d)(1) custody therefore expired on November 26, 2018, but the FMC Butner evaluators did not issue their report until December 19, 2018, the report was not filed with the court until January 11, 2019, and the court did not rule on his restorability until January 24, 2019. The second period then began on January 24, 2019, when the Mississippi court found that Curbow remained incompetent but was likely to be restored to competency in the foreseeable future; that period of § 4241(d)(2) custody expired on May 24, 2019, about two weeks after which, on June 6, 2019, the FMC Butner evaluators reported that Curbow was not likely to be restored to competency and the court granted the evaluators 30 days to further evaluate him.

27

By its Denial Order, the North Carolina court rejected Curbow's argument that unreasonable delays in his earlier periods of § 4241(d) custody rendered him ineligible for § 4246 certification. *See* Denial Order 8. In so doing, the court seemingly applied the unreasonable-delay standard advocated by Curbow and concluded that — on the evidence before it — any delays in Curbow's first and second periods of custody did not disqualify him from § 4246 certification. *See id.* at 6-8.

As an initial matter, the North Carolina court expressed skepticism that Curbow had correctly calculated the duration of the first period under § 4241(d)(1). Invoking our unpublished decision in *United States v. Flanery*, the court observed that the proper measure of the first period may be from the date of Curbow's arrival at FMC Butner (August 22, 2018) to the date of the evaluators' report (December 19, 2018) — a span of less than four months. *See* Denial Order 6-7; *see also United States v. Flanery*, No. 88-5605, 1989 WL 79731, at *4 (4th Cir. July 13, 1989) (measuring § 4241(d)(1) period from the start of hospitalization and explaining that "the statute provides only that the examination must occur within four months").

In any event, the North Carolina court determined that — if the first and second periods of § 4241(d) custody extended as long as Curbow alleged — those delays were excusable because they were not unreasonable. Having observed that the "first four-month period expired — at most — two months before [the second was ordered]" and that the "second expired approximately two weeks before [the third was ordered]," the court noted that "the delays at issue here are significantly less than those incurred in *Wayda*." *See* Denial Order 7-8. The court also "emphasize[d] the importance of compliance with the

28

timeframes [prescribed] in § 4241(d) and the expeditious resolution of custodial treatment questions," while being "mindful of certain administrative or otherwise explainable hurdles that may delay this process." *Id.* at 8. The court resolved that, "under the facts and circumstances of this case," it could not conclude "the temporary lapses in four-month periods justify dismissing [Curbow's § 4246] certificate as untimely." *Id.*

\* \* \*

In sum, the North Carolina court concluded that — because none of Curbow's three periods of § 4241(d) custody was of an unreasonable duration — there was no merit to his argument that he did not qualify under § 4246(a) as a person who may be certified as dangerous. Consequently, the court denied Curbow's motion to dismiss his § 4246 certificate as untimely under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Denial Order 10. The court refrained from specifying "which of these rules apply in evaluating this motion because the issues raised and the ultimate result is the same." *Id.* at 2 n.3.[5]

3.

Having denied Curbow's efforts to secure a dismissal of the § 4246 certificate, the North Carolina court scheduled Curbow's civil commitment hearing for November 23,

_____

[5] On October 13, 2020, Curbow filed a motion for reconsideration of the Denial Order, prompting the Government to submit the declaration discussed *supra*, in note 4. By its order of November 18, 2020, the North Carolina court denied Curbow's motion. *See United States v. Curbow*, No. 5:19-hc-02218 (E.D.N.C. Nov. 18, 2020), ECF No. 27. The court stood by the reasoning of the Denial Order and deemed the motion to be an inappropriate request for "the court to rethink its prior ruling on the motion to dismiss." *Id.* at 4.

2020. In advance of the hearing, the court received two new reports from FMC Butner evaluators — including one submitted by Curbow's self-selected expert witness — opining that Curbow continued to meet the § 4246(a) definition of a dangerous person. That view was then reiterated during the hearing.

At the hearing's conclusion, the North Carolina court found "by clear and convincing evidence[] that [Curbow] suffers a mental disease or defect, as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another." *See* J.A. 152 (tracking language of § 4246(a)). Accordingly, the court pronounced that Curbow was to "be committed to the custody of the Attorney General pursuant to the provisions of . . . Section 4246 for custody, care and treatment." *Id.* The court also advised Curbow that it would consider his conditional release upon a showing that he would "comply with the regimen . . . imposed by the court." *Id.* (referencing § 4246(e)(2), which authorizes "conditional release under a prescribed regimen of medical, psychiatric, or psychological care"). The court explained to Curbow that, at the present time, "I can't just allow you to go back to Mississippi to your farm and if helicopters come over, you shoot at them. That just can't happen. Not with the testimony that I have from the doctors here today." *Id.* at 153. The court said, however, that it would "recommend that FCI Butner consider whether it's in the best interest of [Curbow] that he be transferred to another institution that could address his mental health needs." *Id.*

The North Carolina court entered its written order of Curbow's civil commitment that very day. *See United States v. Curbow*, No. 5:19-hc-02218 (E.D.N.C. Nov. 23, 2020), ECF No. 30 (the "Commitment Order"). The Commitment Order stated in full:

30

On 23 November 2020, this court held a hearing to determine if the respondent should be committed to the custody and care of the Attorney General pursuant to 18 U.S.C. § 4246. For the reasons stated in open court, the court finds, by clear and convincing evidence, that the respondent is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another and that suitable arrangements for State custody and care of the person are not available. It is hereby ORDERED that the respondent be committed to the custody and care of the Attorney General pursuant to 18 U.S.C. § 4246.

*Id.* at 1.

Following entry of the Commitment Order, Curbow noted this appeal. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

On appeal, Curbow does not contest the sufficiency of the evidence of his dangerousness. Rather, Curbow's main appellate argument is that he was ineligible for dangerousness certification and the resultant civil commitment under our *Wayda* decision. *See* 966 F.3d 294 (4th Cir. 2020). Curbow raises multiple theories as to why he was not in the legal custody of the Attorney General under 18 U.S.C. § 4241(d) when his 18 U.S.C. § 4246 certificate was filed, as required by the eligibility provision of § 4246(a). According to Curbow, the North Carolina district court erred in its Denial Order by concluding otherwise.

Relevant to our analysis, Curbow specifically contends that the North Carolina court erred in focusing on the third period of purported § 4241(d) custody — the 49-day period that ended with the § 4246 certificate's filing — and ruling that it did not exceed reasonable

31

bounds. Additionally, Curbow contends that the court erred by rejecting on the evidence his theory that his legal custody expired before the third period even began, as a result of unreasonable delays in the first two periods of § 4241(d) custody. Curbow urges us not only to declare his § 4246 certificate untimely, but to pronounce that the North Carolina lacked jurisdiction over the certificate because § 4246(a)'s eligibility provisions are subject matter jurisdictional.

In response to those contentions, the Government defends the North Carolina court's assessment of the third period of custody, as well as the court's rejection of Curbow's theory regarding delays in the first two periods of custody. The Government also suggests that, in any event, Curbow waived the theory regarding the first two periods by failing to object in the Mississippi court to the alleged delays. As for whether § 4246(a)'s eligibility provisions are subject matter jurisdictional, the Government insists that they are not.

Our analysis proceeds as follows. First, we conclude that the North Carolina court did not err in its assessment of Curbow's third period of § 4241(d) custody. Second, we conclude that Curbow waived his theory regarding delays in his first two periods of § 4241(d) custody. In so ruling, we recognize that § 4246(a)'s eligibility provisions are not subject matter jurisdictional and therefore may be waived.

A.

We first address whether the North Carolina court erred in its Denial Order by focusing on Curbow's third period of § 4241(d) custody and ruling that it was of a reasonable duration. Curbow suggests that we should review the Denial Order under the

32

standards for reviewing a civil commitment decision, and we think it appropriate to do so. Thus, we review the Denial Order's "factual findings for clear error and its legal conclusions de novo." *See United States v. Heyer*, 740 F.3d 284, 292 (4th Cir. 2014). The reasonableness determination is a finding of fact that we review for clear error. As our Judge Sobeloff put it years ago, "What is reasonable is, of course, a fact question, to be determined in each case according to the surrounding circumstances." *See Pa. Threshermen & Farmers' Mut. Cas. Ins. Co. v. Thornton*, 244 F.2d 823, 825 (4th Cir. 1957). Applying those standards, we detect no error in the Denial Order with respect to the North Carolina court's assessment of Curbow's third period of § 4241(d) custody.

1.

As heretofore explained, the 49-day period at issue began with the FMC Butner evaluators' unrestorability determination and the Mississippi district court's contemporaneous order of June 6, 2019, granting 30 days to further evaluate Curbow. At that point, Curbow had been continuously confined at FMC Butner since August 22, 2018. Under the evidence before the North Carolina court, the Mississippi court had previously called for an assessment of Curbow's dangerousness under § 4246, by its July 26, 2018 order committing Curbow for a restorability evaluation under § 4241(d)(1). But the evaluators had not yet conducted a dangerousness evaluation.

The record reflects that the FMC Butner evaluators understood that, pursuant to the June 6, 2019 order, they were to assess both Curbow's restorability and dangerousness. The evaluators notified the Mississippi court of their intent to submit their report "within 14 business days of the study end date to allow for internal review and routing procedures."

33

*See* J.A. 159 (sealed). The evaluators' report was then completed on the 29th day (July 5, 2019), and it concluded that Curbow remained unlikely to be restored to mental competency in the foreseeable future and that he was a dangerous person subject to civil commitment. Over the next 20 calendar days, upon multiple layers of review, the report was signed (on July 12, 2019), FMC Butner's warden prepared the § 4246 dangerousness certificate (on July 17, 2019), and the Government filed the § 4246 certificate in the North Carolina court (on July 25, 2019).

In addition to recognizing that the FMC Butner evaluators complied with the Mississippi court's 30-day deadline by completing their report within 30 days of the June 6, 2019 order, the North Carolina court found that it was not unreasonable that it took another 20 days for FMC Butner's warden and the United States Attorney to review the report and prepare and file the § 4246 certificate. Guided by our *Wayda* decision, the court specified that "the government did strive to certify [Curbow] in a manner that minimized the delay between [the June 6, 2019 unrestorability determination and the July 25, 2019] certificate filing." *See* Denial Order 10. The court also articulated that "[t]he time period elapsed in this case allowed for administrative delays and was reasonable under these facts." *Id.* The court explicitly sought to obey *Wayda*'s teachings, including that the "time period may include 'reasonable explainable administrative delays in [the] certification process,' but the government must 'strive to certify individuals in a time frame that eliminates or at least minimizes the time spent as an incompetent, unrestorable person waiting for a [§ 4246] determination.'" *Id.* at 9 (alterations in original) (quoting *Wayda*, 966 F.3d at 308).

34

Additionally, the North Carolina court recognized that the Government sometimes "may and should proceed with a § 4246 assessment [prior to an unrestorability determination] or certification [before completion of a dangerousness evaluation]" because of the limited time allowed between the unrestorability determination and the filing of the § 4246 certificate. *See* Denial Opinion 9-10. Under the Denial Order, however, such actions were unnecessary in Curbow's case because an unreasonable amount of time did not elapse between his unrestorability determination and § 4246 certification.

2.

Curbow asserts in this appeal that the North Carolina court's reasonableness determination was clearly erroneous and that the court's related analysis was legally unsound in several ways.

a.

For one, Curbow contends that the North Carolina court erred in focusing on the 49-day period between his June 6, 2019 unrestorability determination and the July 25, 2019 filing of his § 4246 certificate. Curbow argues that the court should have instead considered the entire period of his custody — not just his continuous confinement at FMC Butner since August 22, 2018, but his custody reaching back to March 2018 when he was first evaluated for mental competency to stand trial. As Curbow would have it, the proper inquiry was whether it was reasonable for the Government to file the certificate more than 14 months after he was initially taken into custody. *See* Br. of Appellant 31 (asserting that "the court erred in focusing solely on the [49-day] period . . . in assessing reasonableness,"

35

as "[t]he reasonableness clock from *Wayda* cannot be said to only start from a finding of unrestorability").

Curbow's entire-period-of-custody contention is based on a misinterpretation of one sentence of *Wayda*. There, we recognized that the crucial period of custody was the six-month period between Wayda's unrestorability determination and the filing of his 18 U.S.C. § 4248 certificate. *See Wayda*, 966 F.3d at 303. We determined that the duration of that period was unreasonable because "[t]he Government did not provide an adequate explanation of any physical, behavioral, or administrative obstacles to [its] evaluation of [Wayda] or the filing of the § 4248 certification." *Id.* at 308. In the sentence misinterpreted by Curbow, we then stated: "Nothing in the record or arguments before us explain[ed] how the six month delay . . . could be justified by the Government's need to complete the § 4248 analysis of a person who ha[d] been under their complete control for the previous two years." *Id.* at 309.

Under Curbow's reading of that sentence, we held that the proper subject of the reasonableness inquiry was Wayda's entire period of custody. But we did not so hold. Rather, we kept our focus on the six-month period that we identified as crucial, and we simply observed that the fact that Wayda had already been in the Government's custody for two years when the six-month period began raised further unanswered questions about why it took six more months to evaluate Wayda for sexual dangerousness and file his § 4248 certificate.

Therefore, the North Carolina court correctly focused on the 49-day period between his June 6, 2019 unrestorability determination and the July 25, 2019 filing of his § 4246

36

certificate. That is the period comparable to the crucial six-month period in *Wayda*, between Wayda's unrestorability determination and his § 4248 certification.[6]

b.

Relatedly, Curbow argues that the North Carolina court should have ruled that the Government — because it could have done so — was obliged to conduct his dangerousness evaluation well before his unrestorability determination. According to Curbow, the Government possessed all the information needed to satisfy the minimal requirements for filing a § 4246 certificate as early as his initial period of custody under § 4241(d)(1). Additionally, the Government was on notice from the Mississippi court at that time that there should be an assessment of Curbow's dangerousness along with his restorability. Curbow faults the Government for "offer[ing] no reason why it could not complete a timely § 4246 evaluation during [his] continuous custody" and the North Carolina court for "ma[king] no findings on this issue." *See* Br. of Appellant 30.

---

[6] In support of his entire-period-of-custody contention, Curbow insists that to interpret *Wayda* otherwise would mean that "[t]he reasonableness clock [can] be said to only start from a finding of unrestorability." *See* Br. of Appellant 31 (protesting that "[i]f *Wayda* stood for the proposition that the government need only satisfy a reasonableness standard from a finding of unrestorability, then it would essentially authorize indefinite custody under § 4241(d)"). We wholly disagree. Although our focus in *Wayda* was on the period following the unrestorability determination, we in no way excused delays in earlier periods of § 4241(d) custody or excluded the possibility that such delays may be determinative in other cases. To the contrary, we recognized that "[t]he 'reasonableness' language in § 4241(d) merely codifies the requirement asserted in *Jackson v. Indiana*, that our constitutional principles 'impose[] a rule of reasonableness' on federal civil commitment procedures." *See Wayda*, 966 F.3d at 306-07 (second alteration in original) (quoting *Jackson v. Indiana*, 406 U.S. 715, 733 (1972)). We also emphasized that all proceedings under §§ 4241, 4246, and 4248 "should 'move forward with dispatch and not further exacerbate the grim delay in achieving the resolution of these matters.'" *Id.* at 308 (quoting *United States v. Timms*, 664 F.3d at 436, 453 n.14 (4th Cir. 2012)).

37

Curbow relies on the North Carolina court's observation that there are circumstances in which the Government "may and should proceed with a § 4246 assessment [prior to an unrestorability determination]." *See* Denial Order 9-10. Curbow lauds the court for "correctly acknowledg[ing] that the government need not wait for an unrestorability determination to evaluate an individual for dangerousness." *See* Br. of Appellant 29. Curbow's position is that the court nonetheless went on to err by failing to find that his dangerousness evaluation should have occurred sooner.

The problem for Curbow is that the North Carolina court did not say that a dangerousness evaluation must be conducted prior to an unrestorability determination whenever possible. Nor is there other precedent or statutory authority for that proposition. The North Carolina court simply recognized that, because it may not be feasible to timely complete a dangerousness evaluation following an unrestorability determination, it may be prudent for the Government to conduct the dangerousness evaluation sooner. Moreover, precedent and the governing statutory framework require the Government to act with reasonable speed, and not in the quickest possible manner. *See Wayda*, 966 F.3d at 308 (explaining that "reasonable explainable administrative delays in [the] certification process" are allowed). The North Carolina court's reasonableness determination is properly premised on that standard.[7]

---

[7] Insofar as Curbow argues the Government should have filed the § 4246 certificate before completing the dangerousness evaluation, we similarly reject his argument. To be sure, § 4246 suggests that a dangerousness evaluation may be conducted after the certificate is filed. *See* 18 U.S.C. § 4246(b) (authorizing the civil commitment court to order, "[p]rior to the date of the hearing," "that a psychiatric or psychological examination (Continued)

c.

Finally, Curbow asserts that the North Carolina court's "determination that the time period was reasonable does not bear scrutiny." *See* Br. of Appellant 31. Curbow specifically complains that the court accepted the Government's evidence of the administrative steps it took from the unrestorability determination to the filing of the § 4246 certificate, without requiring the Government "to explain *why* these tasks were not accomplished earlier." *Id.* at 32. Again, Curbow seeks to replace the reasonableness standard with a quickest-possible-manner test. Again, we reject Curbow's effort and recognize that the North Carolina court correctly evaluated the Government's conduct for reasonableness.

We also confirm that we detect no clear error in the North Carolina court's reasonableness determination. Unlike the situation in *Wayda*, the Government has detailed its activities between Curbow's unrestorability determination and the filing of his § 4248 certificate. The Government has also proffered evidence that Curbow was not previously evaluated for dangerousness and that the assessments during his prior confinement at FMC Butner were for mental competency and restorability. As the governing statutory framework and the FMC Butner evaluators' July 5, 2019 report reflect, competency and

_____

of the defendant be conducted"). Nevertheless, there is no requirement or even recommendation that the Government file a § 4246 certificate without first evaluating the defendant and assuring itself of his dangerousness, so long as the pre-certificate evaluation can be completed within a reasonable period of time. Indeed, in our *Timms* decision, we recognized that because "[n]o specific steps are required prior to certifying someone," there is a "risk of improper certification" that may cause the Government to later dismiss the certificate. *See* 664 F.3d at 452 (specifically addressing certification under § 4248).

39

restorability assessments are separate and distinct from dangerousness evaluations. On this record, the North Carolina court did not clearly err in finding that the 49-day gap between Curbow's unrestorability determination and the filing of his § 4246 certificate was reasonable despite the fact that Curbow had already been hospitalized at FMC Butner when that period began.[8]

Furthermore, the North Carolina court was entitled to accept that the Government took a reasonable amount of time to be deliberate and ensure that it was evaluating Curbow's dangerousness accurately — particularly considering his alleged criminal conduct and use of firearms. *See Wayda*, 966 F.3d at 307 (recognizing that the "'reasonable' amount of time a person may be further hospitalized after incompetency and unrestorability findings must . . . take into account the threat potentially posed to the community"). In these circumstances, we are satisfied to uphold the court's reasonableness determination.

## B.

We next address whether the North Carolina court erred in its Denial Order by rejecting Curbow's theory that his legal custody expired before the third period of

---

[8] That competency and restorability assessments are separate and distinct from dangerousness evaluations is corroborated by the November 3, 2020 declaration that the Government submitted to the North Carolina court following entry of its Denial Order. *See supra* note 4. In that declaration, an FMC Butner official explained that "[a] dangerousness risk assessment is quite different from an evaluation of a person's competency to stand trial." *See* J.A. 112. As such, Curbow's prior assessments did not provide the evaluators with much of the information needed to evaluate his dangerousness, including the "historical, clinical, and risk management factors that might increase (or mitigate) the risk [he] would pose to the community if released." *Id.* at 112-13.

§ 4241(d) custody even began, as a result of unreasonable delays in the first two periods of § 4241(d) custody. Whereas the North Carolina court rejected Curbow's theory on the evidence, we conclude that the theory has been waived and thus do not decide its merits as a matter of either evidence or law.

1.

Curbow suggests, as he did in the North Carolina court, that our *Wayda* decision established a test under which an unreasonable delay in any period of § 4241(d) custody irrevocably ends the Attorney General's legal custody over the defendant and renders him ineligible for subsequent § 4246 or § 4248 certification. *See* Br. of Appellant 25-26 (pointing to observation in *Wayda*, 966 F.3d at 303, that "[e]ven if the delays prior to the [unrestorability determination were] explainable and the periods of those delays were reasonable, [Wayda's] continued confinement between the [unrestorability determination] and the § 4248 certificate's filing must also [have been] limited to a reasonable period"). Additionally, Curbow again argues that there were unexplained and unreasonable delays in his first and second periods of § 4241(d) custody that disqualified him from § 4246 certification, regardless of the reasonableness of the delay in his third period of § 4241(d) custody.

Curbow continues to insist that his first period of § 4241(d) custody began on July 26, 2018, when the Mississippi court ruled him mentally incompetent to stand trial and ordered a restorability evaluation. That period then expired on November 26, 2018, pursuant to the express four-month deadline imposed by § 4241(d)(1). It took another two months, until January 24, 2019, for the Mississippi court to rule that he remained

41

incompetent to stand trial but was likely to be restored to competency, and to order his second period of § 4241(d) custody. The second period was ordered under § 4241(d)(2) and expired on May 24, 2019, pursuant to the four-month deadline specified by the Mississippi court. About two weeks thereafter, on June 6, 2019, the Mississippi court accepted his unrestorability determination and ordered his third period of § 4241(d) custody.

As Curbow expounds on appeal concerning the alleged first-period lapse, "[t]o maintain legal custody beyond November 26, 2018, the government had to either initiate civil commitment proceedings or obtain a timely finding by the court under § 4241(d)(2) that a substantial probability existed that [he] would attain capacity to permit the [criminal] proceedings to go forward within an additional reasonable period of time." *See* Br. of Appellant 27. Curbow maintains that "[t]he government did neither," as it did not file his § 4246 certificate on or before November 26, 2018, and it did not obtain the restorability ruling from the Mississippi court until January 24, 2019. *Id.* In arguing that the January 24, 2019 restorability ruling was untimely obtained, Curbow asserts that "the two-month lapse between the expiration of the Attorney General's custody on November 26, 2018 and the January 24, 2019 court order [was] not reasonable." *Id.*

Curbow further contends that, even if there was no first-period lapse, there was a lapse in the second period of § 4241(d) custody. That is so, Curbow asserts, because the two-week gap between the expiration of the second period on May 24, 2019, and the Mississippi court's June 6, 2019 order was itself unreasonable.

42

In response, the Government disputes the merits of Curbow's theory regarding unreasonable delays in the first two periods of § 4241(d) custody. The Government also suggests that Curbow waived his theory by failing to object in the Mississippi court to the alleged delays. Albeit without using the term "waiver," the Government asserts a waiver in substance by maintaining that Curbow's failure to object means that "[h]e cannot now complain that these delays somehow invalidate the Government's certificate of dangerousness." *See* Br. of Appellee 32. In reply, Curbow has acknowledged that the Government "argues that because [he] did not object to the Mississippi court's orders, he cannot complain that the [§ 4246] certificate was untimely filed." *See* Reply Br. of Appellant 8. Curbow contends, however, that he "could not possibly challenge the delay in filing a certificate that the government had not yet filed." *Id.* According to Curbow, he may challenge the § 4246 certificate's timeliness in the North Carolina court on the basis of unreasonable delays in his first two periods of § 4241(d) custody, even though he did not object in the Mississippi court to the alleged delays at the time they occurred.[9]

2.

a.

At the outset, we emphasize that we do not interpret our *Wayda* decision to establish the unreasonable-delay standard advocated by Curbow, i.e., a standard that would

---

[9] Curbow also maintains in reply to the Government's suggestion of waiver that "this Court rejected an identical argument in *Wayda*." *See* Reply Br. of Appellant 8. Although the Government indeed raised a similar argument in *Wayda*, our *Wayda* decision did not acknowledge or discuss that contention.

disqualify a defendant from § 4246 or § 4248 certification based on an unreasonable delay in any period of § 4241(d) custody. Moreover, as Curbow concedes, we certainly did not apply any such standard in *Wayda*. *See* Br. of Appellant 25-26 (acknowledging that "this Court simply did not need to reach [the] delays [in the first two periods of Wayda's § 4241(d) custody] in light of the unreasonableness of the delay [in the third period]").

To now accept Curbow's theory that an unreasonable delay in his first period of § 4241(d) custody irrevocably ended the Attorney General's legal custody over him, we would have to rule that the first period in fact lapsed before the Mississippi court ordered the second. We would also have to rule that the first-period lapse deprived the Mississippi court of the authority to order the second and third periods. Alternatively, we could rule that the first period did not lapse but the second did, thereby depriving the Mississippi court of the authority to order the third period alone. But because we agree with the Government's suggestion that Curbow waived his theory, we cannot pass judgment on the theory's merits and make the evidentiary and legal rulings that Curbow seeks.[10]

---

[10] Although we do not consider the merits of Curbow's theory, we note that at least one of our sister courts of appeal has concluded that there is no requirement in § 4241(d) that a person must presently be in legal custody under § 4241(d)(1) when additional § 4241(d)(2) custody is authorized. *See United States v. Magassouba*, 544 F.3d 387, 409 (2d Cir. 2008) (holding "that the statute does not affirmatively require a district court to issue a § 4241(d)(2) commitment order before the expiration of a § 4241(d)(1) hospitalization order, nor does it strip a district court of the authority to do so thereafter"). That court did not foreclose the possibility that there could be a circumstance in which overlong § 4241(d)(1) confinement would deprive a district court of authority to order additional § 4241(d)(2) custody. *Id.* at 415. The court explained, however, that because the extended confinement in the case before it constituted harmless error, it was unnecessary to "consider whether such an error could ever undermine a district court's authority to order additional § 4241(d)(2) confinement." *Id.*

b.

Simply put, the proper time and place to contest the alleged unreasonable delays in the first and second periods of Curbow's § 4241(d) custody was during the Mississippi proceedings and in the Mississippi court. It is apparent, however, that counsel made a tactical decision on Curbow's behalf to refrain from timely objecting in the Mississippi court to any such delays. We therefore must conclude that Curbow waived his ability to challenge his § 4246 certification in the North Carolina court on the theory that unreasonable delays in the first and second periods caused his legal custody to expire before the third period even began. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (defining "waiver" as "the intentional relinquishment or abandonment of a known right" (internal quotation marks omitted)).

As an example of how Curbow could have sought to preserve objections to the alleged unreasonable delays, he could have requested release in the Mississippi court from his first- or second-period confinement, or he could have raised a challenge in that court to the court's authority to order the second period based on the first-period lapse or the third period based on the second-period lapse. If unsuccessful, he could have invoked the collateral order doctrine and filed an appeal in the appropriate court of appeals, the Fifth Circuit. *See United States v. Magassouba*, 544 F.3d 387, 391-92 (2d Cir. 2008) (entertaining appeal under collateral order doctrine from § 4241(d)(2) commitment order, where defendant argued district court lacked authority to enter order as result of lapse in § 4241(d)(1) custody). As another option, to complain of any delay resulting from the Mississippi court's inaction, Curbow could have made a request in the Fifth Circuit for

45

mandamus relief. *See id.* at 411 n.16 (observing that "a defendant may petition [the court of appeals] for a writ of mandamus to compel an inattentive district court to make the findings required by law to support the challenged confinement").

Rather than taking any such actions, the Mississippi counsel refrained from objecting in the Mississippi court and has been successful in having Curbow ruled mentally incompetent and unrestorable, thereby stalling the Mississippi proceedings at a point where there is just a criminal complaint against Curbow and no indictment, trial, conviction, or sentencing. Meanwhile, the North Carolina counsel clarified at oral argument in this appeal that Curbow seeks to preserve his achievements in the Mississippi proceedings — particularly the unrestorability determination that was rendered after his first and second periods of § 4241(d) custody allegedly lapsed — but to have the North Carolina court's Commitment Order vacated and his § 4246 certificate irrevocably dismissed. That is, Curbow wishes to return to his Mississippi farm with the unrestorability determination in place so that he will never be subject to trial on the criminal charge pending in the Mississippi court.

Although Curbow's goal is understandable, he cannot properly ask the North Carolina court and our Court to belatedly adjudicate in these civil commitment proceedings issues that he should have pursued in the Mississippi court and the Fifth Circuit. Curbow

46

is stuck with the strategy not to object in the Mississippi court to the alleged unreasonable delays in the first and second periods of § 4241(d) custody.[11]

c.

In concluding that Curbow has waived his theory regarding unreasonable delays in his first two periods of § 4241(d) custody, we recognize that it could be improper to find waiver if the § 4246(a) eligibility provisions are subject matter jurisdictional. *See Gonzalez v. Thayer*, 565 U.S. 134, 141 (2012) (emphasizing that "[s]ubject-matter jurisdiction can never be waived or forfeited"). Consequently, we have considered that issue and assured ourselves that the § 4246(a) eligibility provisions are not subject matter jurisdictional and may be waived.

The subject matter jurisdiction of a court refers to its "statutory or constitutional *power* to adjudicate the case." *See Steel Co. v. Citizens for Better Env't,* 523 U.S. 83, 89 (1998)). As the Supreme Court has observed, "the distinction between jurisdictional conditions and claim-processing rules can be confusing in practice." *See Reed Elsevier,*

---

[11] Even if the failure to object in the Mississippi court was an oversight, rather than a conscious strategy, we would be bound to rule that Curbow forfeited his theory that the alleged unreasonable delays in his first two periods of § 4241(d) custody rendered his § 4246 certification untimely. *See Olano*, 507 U.S. at 733 (explaining that while "waiver is the intentional relinquishment or abandonment of a known right," "forfeiture is the failure to make the timely assertion of a right" (internal quotation marks omitted)). To be sure, we sometimes consider forfeited issues in civil cases where there are "exceptional circumstances." *See, e.g.*, *Volvo Constr. Equip. N. Am, Inc. v. CLM Equip. Co.*, 386 F.3d 581, 603 (4th Cir. 2004). But we would yet decline to entertain Curbow's theory, as it would require review of orders issued in criminal proceedings separate from these civil commitment proceedings, by a different district court, and by a district court that is in another circuit.

47

*Inc. v. Muchnick*, 559 U.S. 154, 161. Thus, the Court has developed a "general approach" for differentiating jurisdictional conditions from claim-processing rules and mere elements of a claim. *Id.* Under that approach,

> [i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006) (footnote and citation omitted). Absent "clear jurisdictional language," a statutory limitation on coverage can be deemed subject matter jurisdictional in limited circumstances, e.g., by inferring Congress' intent "from the existence of a 'long line' of Supreme Court decisions 'left undisturbed by Congress' that 'treated a similar requirement as jurisdictional.'" *See United States v. Wilson*, 699 F.3d 789, 795-96 (4th Cir. 2012) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 436 (2011)).

Adhering to this authority, we are convinced that § 4246(a)'s eligibility provisions set forth an element of a civil commitment claim, and not a jurisdictional condition. That is because nothing in the text of § 4246(a) suggests that Congress intended the eligibility provisions to count as jurisdictional. Furthermore, there is not a long and undisturbed line of Supreme Court decisions recognizing such a congressional intent. As such, it is wholly appropriate for us to conclude that Curbow waived the theory that he was ineligible for § 4246 certification based upon unreasonable delays in his first two periods of § 4241(d) custody.

d.

Finally, we note that we are cognizant that Curbow has been deemed mentally incompetent and unable to understand and assist in the proceedings against him. This is not a situation, however, where a determination of waiver would be unjust, such as where a mentally incompetent defendant is found to have waived his right to counsel. *See United States v. Ziegler*, 1 F.4th 219, 226 (4th Cir. 2021) (explaining that "[t]o waive counsel, a defendant must . . . be mentally competent" (citing *Godinez v. Moran*, 509 U.S. 389, 396 (1993)). Rather, Curbow is and has continuously been represented by counsel responsible for choosing his legal strategy and protecting his interests. *See Magassouba*, 544 F.3d at 411 n.16 ("To be sure, an incompetent defendant cannot be expected to pursue these remedies himself, but that is precisely why he has an attorney whose responsibility is to safeguard the defendant's legal interests."). All indications are that Curbow's Mississippi counsel and his North Carolina counsel have performed admirably on his behalf.

\* \* \*

To summarize, Curbow's argument that he was ineligible for § 4246 certification is without merit in part and waived in part. The North Carolina court properly assessed Curbow's third period of § 4241(d) custody, and Curbow waived his theory regarding his first two periods of § 4241(d) custody.

III.

Along with his argument that he was ineligible for 18 U.S.C. § 4246 dangerousness certification, Curbow presents two additional grounds for challenging his civil

49

commitment by the North Carolina district court. First, Curbow contends that it was not sufficient that FMC Butner's warden attested in Curbow's § 4246 certificate "that suitable arrangements for State custody and care of [Curbow were] not available." *See* 18 U.S.C. § 4246(a). Invoking our decision in *United States v. Copley*, 935 F.2d 669 (4th Cir. 1991), Curbow asserts that the North Carolina court should have required the Government to present evidence at Curbow's commitment hearing regarding the unavailability of state custody and care, and the court should have then made findings on the issue. *See* Br. of Appellant 44 ("In short, because the court never 'determine[d] that there [was] no available state facility to house [Curbow],' the district court erred in committing [him]." (first alteration in original) (quoting *Copley*, 935 F.2d at 672)).

We are not convinced that Curbow's contention is actually supported by our *Copley* decision or other controlling precedent. In any event, Curbow has waived his contention by failing to raise it in the North Carolina court. *Cf. United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 405 (4th Cir. 2013) ("[W]hen a party to a civil action fails to raise a point at trial, that party waives review of the issue unless there are exceptional or extraordinary circumstances justifying review." (internal quotation marks omitted)).

Next, Curbow contends — again for the first time on appeal — that the North Carolina court did not adequately explain its finding of dangerousness, either during the commitment hearing or in its subsequent Commitment Order incorporating "the reasons stated in open court." *See* Commitment Order 1. According to Curbow, he has a due process "right to know why his arguments against commitment were rejected and why he

50

must now spend his foreseeable future in a federal psychiatric facility in North Carolina instead of returning home to his farm in Mississippi." *See* Br. of Appellant 45 (drawing analogy to *United States v. Ross*, 912 F.3d 740, 746 (4th Cir. 2019), where we recognized that 18 U.S.C. § 3553(c) requires sentencing court to adequately explain its imposition of special conditions of supervised release, and that any error in failing to do so "is not harmless").

To the extent that it is appropriate to review Curbow's contention on the premise that he did not have the opportunity to raise it in the North Carolina court, we nevertheless must reject it as a result of the absence of any prejudice. For even if there is merit to the proposition that the North Carolina court erred by inadequately explaining its dangerousness finding, such an error was of no apparent consequence to Curbow. He does not contest the adequacy of the evidence of his dangerousness, and even his own expert witness agreed that he met the § 4246(a) definition of a dangerous person.

## IV.

Pursuant to the foregoing, we affirm the judgment of the North Carolina district court ordering Curbow's civil commitment under 18 U.S.C. § 4246.

*AFFIRMED*

THACKER, Circuit Judge, concurring:

I concur with the majority opinion that Gary Curbow ("Appellant") has waived the opportunity to challenge the delays in his first two periods of 18 U.S.C. § 4241(d) custody. I write separately solely to address my colleague's concurring opinion regarding *United States v. Wayda*, 966 F.3d 294 (4th Cir. 2020).

We all agree that *Wayda* does not specifically address what impact, if any, lapses in the initial commitment periods authorized by § 4241(d) have on a district court's authority to order further commitment or the Attorney General's legal custody over a defendant. In *Wayda*, we explained, "[T]he crucial window of time for our analysis cover[ed] the period from the filing of the Unrestorability Determination . . . to the filing of the § 4248 [dangerousness] certificate." 966 F.3d at 303. We did not hold that the earlier delays in Wayda's commitment proceedings were unreasonably long, nor did we speculate as to what the result would be if we did reach such a holding. We merely explained, "Even if the delays prior to the Unrestorability Determination [were] explainable and the period of those delays were reasonable, [Wayda's] continued confinement between the Unrestorability Determination and the § 4248 certificate's filing must also be limited to a reasonable period." *Id.*

In a purely academic discussion, then, my good colleague opines, "[W]e should exercise caution before extending [*Wayda*] beyond its actual, relatively limited holding." *Post* at 54–55. But we are not extending *Wayda* in any manner in the present case. Just as in *Wayda*, the initial periods of commitment are not dispositive. Therefore, in this case,

52

we are merely analyzing the period between Appellant's unrestorability determination and the filing of his 18 U.S.C. § 4246 certificate -- the same time period at issue in *Wayda*.

In short, we do not -- and need not -- reach the complex issue of *Wayda*'s effect on earlier periods of § 4241(d) custodial hospitalization. Indeed, to do so at this point would be to render an advisory opinion. I respect the opinion of my good colleague, but that argument is best left for another day, at the proper time in the proper case.

TRAXLER, Senior Judge, concurring:

I fully concur in Judge King's excellent opinion affirming the judgment of the district court ordering Curbow civilly committed as a danger to others under 18 U.S.C. § 4246.

Applying the holding of *United States v. Wayda*, 966 F.3d 294 (4th Cir. 2020), Judge King concludes that the government initiated commitment proceedings within a reasonable time after the final determination that Curbow's competence to stand trial could not be restored. Curbow, however, also argued that we should extend *Wayda*'s approach and hold that the government lost "legitimate" custody when the periods of competency evaluation exceeded the statutory time limits of 18 U.S.C. § 4241(d), such that he no longer qualified as being in "the custody of the Attorney General" as required for commitment under § 4246.[1] As Judge King explains, however, the threshold requirements of § 4246 are not subject-matter jurisdictional, and Curbow has waived any challenge to the delays occurring within the competency-evaluation process under § 4241.

I write separately because I believe there is a better analysis to use in these cases than was set forth in *Wayda*. I recognize, of course, that *Wayda* is binding precedent and that we are obliged to apply its holding. *Wayda*, however, did not resolve the question about the effect of internal delays during the § 4241 evaluation process, and I believe, at a minimum, that we should exercise caution before extending it beyond its actual, relatively

---

[1] Although *Wayda* involved commitment as a sexually dangerous predator under 18 U.S.C. § 4248, the relevant language of § 4246 is identical. *See* 18 U.S.C. § 4246.

54

limited holding.  Accordingly, given the importance of the issues at stake--the defendant's fundamental liberty interest and the government's interests in bringing criminal cases to trial and protecting the public from danger--I will explain my concerns and set out what I believe is the better path.

I.

In *Jackson v. Indiana*, 406 U.S. 715 (1972), the Supreme Court held that the Due Process Clause prohibits the government from indefinitely detaining a defendant simply because he is not competent to stand trial:

> [A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.

*Id.* at 738.

In response to *Jackson*, Congress enacted 18 U.S.C. § 4241 to establish procedures for determining whether a defendant is competent to stand trial.  Most relevant to this case is § 4241(d), which provides as follows:

> (d) Determination and disposition.--If, after [a preliminary competency] hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility--
>
> > (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability

55

that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

(2) for an additional reasonable period of time until--

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

(B) the pending charges against him are disposed of according to law;

whichever is earlier.

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the [civil commitment] provisions of sections 4246 and 4248.

18 U.S.C. § 4241(d).

In *Wayda*, this court held that when a district court places a defendant in the custody of the Attorney General for a competency evaluation under § 4241, the government must initiate civil commitment under § 4248 within a reasonable time after the final determination is made that the defendant is not competent to stand trial and that his status likely will not improve. *See Wayda*, 966 F.3d at 305-06. If the district court considering the § 4248 certificate concludes that the government did not file the certificate within a reasonable time, the defendant can "no longer be considered legitimately committed to the Attorney General's custody." *Id.* at 309. And if the Attorney General lacks legitimate custody, then, the defendant does not qualify as one "who has been committed to the custody of the Attorney General pursuant to section 4241(d)," 18 U.S.C. § 4248(a), as required for a dangerousness commitment under § 4246 or § 4248.

56

*Wayda* did not decide whether delays within the competency-evaluation process also cause the expiration of the Attorney General's legitimate custody of the defendant. Instead, the court simply assumed that any internal delays under § 4241(d) were reasonable and resolved the case based on the delay between the final competency determination under § 4241 and the initiation of commitment proceedings under § 4248. *See Wayda*, 966 F.3d at 303. Curbow contends that we should extend *Wayda* and hold that the government's failure to meet the statutory time limits for evaluation set out in § 4241(d) likewise renders the Attorney General's custody illegitimate so as to preclude the initiation of commitment proceedings under §§ 4246 and 4248. For the reasons explained below, I would have analyzed the issues in *Wayda* differently. In any event, I believe we should not extend its principles any further in this case.

II.

*Wayda*'s holding was grounded in the concept of legitimate and illegitimate custody over a criminal defendant.[2] I find no support for that concept in the language or structure of the relevant statutes, and I disagree with *Wayda*'s determination that § 4241 should be read as imposing a reasonable time limitation that strips away the Attorney General's legal

---

[2]    Although the concept of legitimate custody was the cornerstone of *Wayda*'s holding, the court did not explain precisely what that concept means or whether it has relevance outside the commitment process. For example, if the Attorney General's custody over an incompetent defendant has become illegitimate, despite the absence of a court order rescinding custody, could the defendant seek recovery for false imprisonment? Could he be charged with escape if he walked out of an open prison gate?

custody over a mentally incompetent and dangerous defendant for purposes of a civil commitment under § 4246 or § 4248.

## A.

With regard to *Wayda*'s actual holding, I see no language in § 4246 or § 4248 suggesting that a defendant ceases to be in "the custody of the Attorney General" if the government waits too long after the final § 4241 competency determination to initiate commitment proceedings. Because neither statute defines "custody" or explains what it means to be held in the custody of the Attorney General, the words should be given their plain and ordinary meaning. In *United States v. Joshua*, 607 F.3d 379 (4th Cir. 2010), this court held that "the word 'custody' carries two common meanings relating to government detention"—physical custody and legal custody. *Id.* at 386. Physical custody involves "directly limiting an individual's physical freedom," while legal custody means "having lawful authority over an individual's detention." *Id. Wayda*'s reference to "legitimate" custody is not one of the commonly understood forms of custody recognized in *Joshua*.

Perhaps *Wayda* intended "legitimate custody" to be synonymous with "legal custody."[3] Nevertheless, there is no language in § 4246 or § 4248 suggesting that the legitimacy of the Attorney General's custody over the defendant or authority to seek civil

---

[3] In *Wayda*, the defendant argued that "the Attorney General's legal custody over him ceased before the Government filed its § 4248 certification." *Wayda*, 966 F.3d at 298. However, the *Wayda* court did not refer to "legal custody" thereafter or cite to our opinion in *Joshua*.

commitment of a dangerous person is dependent upon the timing of any previous court-ordered competency evaluation.

Similarly, § 4241 imposes no statutory time limitation on when the § 4246 or § 4248 certification must be filed. Section 4241 addresses *only* the question of whether a criminal defendant has the mental capacity "to understand the nature and consequences of the [criminal] proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). While § 4241 recognizes that an incompetent defendant ultimately may be subject to civil commitment, the language of § 4241 itself places no restriction on the government's authority to seek commitment of dangerous individuals in its custody.

Accordingly, I see no statutory support for concluding that the Attorney General loses the authority to civilly commit an incompetent, dangerous person in the government's lawful custody simply because the government waited too long after the final competency determination.

B.

There is likewise no language in § 4241 suggesting that the legitimacy of the Attorney General's legal custody of the defendant for purposes of § 4246 or § 4248 is dependent on strict compliance with the interim time periods set out in § 4241(d). Under the first sentence of § 4241(d), the district court must commit to the custody of the Attorney General any defendant that the court finds is presently not competent to stand trial. That directive is contained in its own sentence, with no time period attached. The *next* sentence then directs the Attorney General to "hospitalize the defendant for treatment," and the time periods of §§ 4241(d)(1) and (d)(2) are contained in that separate sentence requiring

59

hospitalization and treatment. The time periods of § 4241(d)(1) and (d)(2) simply establish the maximum periods of *hospitalized evaluation and treatment* authorized for determining a defendant's competence to stand trial, not the maximum period that the defendant may be held in the custody of the Attorney General. *See United States v. Magassouba*, 544 F.3d 387, 408 (2d Cir. 2008) ("[W]e construe § 4241(d)(1) to impose a four-month limit only on the Attorney General's authority to hold an incompetent defendant in custodial hospitalization for the purpose of determining the probability of his regaining competency.").

Moreover, although § 4241(d) sets time limits for the various stages of the competency-evaluation process, the statute does not provide any remedies or attach any consequences to the government's failure to meet the deadlines. As the Supreme Court has explained, "[t]here is no presumption or general rule that for every duty imposed upon the court or the Government and its prosecutors there must exist some corollary punitive sanction for departures or omissions, even if negligent." *United States v. Montalvo–Murillo*, 495 U.S. 711, 717 (1990). Accordingly, I do not believe that this court is authorized to ignore the statute's deliberate silence and impose drastic remedies not intended by Congress.

*Montalvo–Murillo* involved a similar issue arising under the Bail Reform Act of 1984. The Act provides that a detention hearing "shall be held *immediately* upon the [criminal defendant's] first appearance before the judicial officer," and allows for a single continuance not to exceed 5 days. 18 U.S.C. § 3142(f)(2). The district court agreed with the government that no conditions could be imposed that would reasonably assure the

appearance of the defendant and the safety of the community, a finding that would ordinarily lead to the detention of the defendant. *See id.* § 3142(e). However, because the detention hearing had not been held at the time of the defendant's first appearance, as required by § 3142(f), the district court ordered the defendant released (with conditions) as the remedy for the statutory violation.

The Supreme Court rejected that analysis. Noting that "[n]othing in § 3142(f) indicates that compliance with the first appearance requirement is a precondition to holding the [detention] hearing or that failure to comply with the requirement renders such a hearing a nullity," the Court held that

> a failure to comply with the first appearance requirement does not defeat the Government's authority to seek detention of the person charged. . . . . In our view, construction of the Act must conform to the great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided.

*Montalvo-Murillo*, 495 U.S. at 717–18 (internal quotation marks omitted). The Court acknowledged that the government had a mandatory obligation to follow the statutory time limits, but nonetheless concluded that "the sanction for breach is not loss of all later powers to act." *Id.* at 718. As the Court explained,

> Automatic release contravenes the object of the statute, to provide fair bail procedures while protecting the safety of the public and assuring the appearance at trial of defendants found likely to flee. The end of exacting compliance with the letter of § 3142(f) cannot justify the means of exposing the public to an increased likelihood of violent crime by persons on bail, an evil the statute aims to prevent. The Government's interest in preventing these harms remains real and substantial even when the time limits have been ignored.

*Id.* at 720 (citation omitted).

I believe the same approach should be taken in cases involving the competency-evaluation process of § 4241. No statutory language makes strict compliance with the time limit for the first evaluation period under § 4241(d)(1) a precondition for further evaluation under § 4241(d)(2), or otherwise indicates that the legitimacy of the court-ordered custody is affected by the manner in which the Attorney General carries out its obligation to evaluate the defendant's competency. No language in § 4246 or § 4248 suggests that a defendant who in fact has been ordered to the custody of the Attorney General by a district court exercising the authority granted by § 4241 should *not* be considered in "the custody of the Attorney General" if another court concludes, in hindsight, that the government waited too long after the final competency determination to initiate commitment proceedings based on the defendant's dangerousness.

## C.

As with the Bail Reform Act, the statutory scheme at issue in this case implicates important public and private interests. Section 4241 establishes a procedure for determining competency to stand trial and serves the public interest in ensuring competent defendants are held accountable for their crimes. Sections 4246 and 4248 establish procedures for the civil commitment of sexual predators and those who are dangerous to others, thus serving the public interest in maintaining public safety. *Wayda*'s conclusion that legitimate custody expires if the government takes too long to seek commitment creates a penalty unintended by Congress that ignores the public's interests altogether.

Curbow's attempt to extend *Wayda*'s legitimate-custody concept to breaches of § 4241's internal time limits likewise ignores the public interest in safety. Curbow contends

62

that the government lost "legitimate custody" over him and was precluded from seeking commitment for dangerousness the moment his initial evaluation exceeded the four months permitted by § 4241(d)(1). Even if the second evaluation period had been completed as early as the initial evaluation was late, such that both evaluations were completed within the time frame contemplated by § 4241, Curbow's approach would still require us to conclude that the Attorney General's legitimate custody terminated immediately and automatically upon the government's first procedural misstep.

As the Supreme Court explained in *Montalvo-Murillo*, "[t]he safety of society does not become forfeit to the accident of noncompliance with statutory time limits where the Government is ready and able to come forward with the requisite showing to meet the burden of proof required by the statute." 495 U.S. at 720. That is precisely the case here. The government presented evidence that the district court found sufficient to establish that Curbow was a danger to others and met the requirements for civil commitment under § 4246, and this court has found no error in the district court's analysis. The government's arguable noncompliance with the time limits of § 4241(d) or delay in initiating the commitment proceedings should not render the government's custody over the defendant illegitimate, nor should it require the release of a person properly found to be a danger to the public. *See Montalvo-Murillo*, 495 U.S. at 720 ("The end of exacting compliance with the letter of § 3142(f) cannot justify the means of exposing the public to an increased likelihood of violent crime by persons on bail, an evil the statute aims to prevent.").

III.

63

In my view, the provisions of §§ 4241, 4246, and 4248 work together to create a straightforward process for resolving questions of competency and dangerousness.

If the district court makes a preliminary finding under § 4241 that a defendant is incompetent to stand trial, the court *must* place the defendant in the custody of the Attorney General. *See United States v. Brennan*, 928 F.3d 210, 214 (2d Cir. 2019) ("[T]he statute calls for the district court to determine present competency and *mandates* commitment for further assessment if the defendant is presently incompetent.") (emphasis added); *United States v. Shawar*, 865 F.2d 856, 860 (7th Cir. 1989) ("[O]nce a defendant is found incompetent to stand trial, a district judge has no discretion in whether or not to commit him."). The Attorney General must then hospitalize the defendant for no more than four months for further evaluation and treatment to determine if the defendant's competency can be restored. *See* 18 U.S.C. § 4241(d)(1). If the court determines after the first evaluation period that the defendant is still not competent to stand trial but that competency likely can be restored, the Attorney General must hospitalize the defendant for an additional reasonable time until the defendant becomes competent to stand trial or the charges are dismissed. *See id.* § 4241(d)(2).

If the defendant is found to be competent to stand trial at the end of that additional reasonable period, the Attorney General's authority to hospitalize the defendant under § 4241(d) ends, and the defendant should be transferred to the appropriate facility to await

trial. [4]  If, on the other hand, competency has not been restored at the end of that additional reasonable period, the government may proceed under § 4246 or § 4248 if it believes that the mentally incompetent defendant also poses a danger to the community.

This statutory scheme, with the relationship between § 4241 and the civil commitment statutes, works to ensure that mentally-incompetent defendants are not subjected to the criminal justice process while also protecting the public from dangerous individuals who are in the custody of the government.  Internal delays within the competency evaluation process should not derail this process.  The Attorney General's failure to meet the § 4241(d) deadlines does not affect the legitimacy of its custody over the defendant, nor does it divest the district court of its authority to act as required by the statute.  *See Magassouba*, 544 F.3d at 409 ("[D]istrict courts do have the authority to order a defendant's additional custodial hospitalization pursuant to § 4241(d)(2)(A) even after the limited period of evaluative hospitalization under § 4241(d)(1) has expired.").  A defendant committed to the custody of the Attorney General under § 4241 upon a preliminary finding of incompetence thus remains in the lawful custody of the Attorney General under § 4241 until the competency question is finally resolved, even if the government exceeds the internal time limits of § 4241(d).

---

[4]  If the defendant is competent to stand trial, the criminal charges against him provide the basis for the Department of Justice to continue to exercise authority over the defendant in the same manner as with any other criminal defendant.  If the competency proceedings took place before a detention hearing was held, the government may proceed with a detention hearing in the appropriate jurisdiction.

Although I do not believe that the internal time limits of § 4241(d) affect the legitimacy of the Attorney General's custody over a defendant, or that a delay in the initiation of civil commitment under § 4246 or § 4248 requires dismissal of the commitment proceedings, that does not make the time limits meaningless or leave a defendant without recourse. A defendant hospitalized and evaluated for longer than the period permitted by statute may file a mandamus petition seeking release from custodial hospitalization or other appropriate relief in the pending criminal proceeding. In addition, a defendant in custody for an unreasonable period of time without final resolution of the competency question may file a habeas petition in the district of confinement raising a Due Process claim under *Jackson v. Indiana*.

As noted, *Jackson* held that the Due Process Clause prohibits the indefinite detention of a defendant simply because is he incompetent to stand trial. The relevant question under *Jackson*, however, is the reasonableness of the *overall period* of detention, not how long it took the government to complete discrete steps in the process.. *See Montalvo-Murillo*, 495 U.S. at 717 (noting "the great principle of public policy . . . which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided").

IV.

To summarize, I believe Judge King has faithfully applied *Wayda*, and I fully concur in his opinion affirming the judgment of the district court. Nevertheless, I believe that once a district court orders legal custody of the defendant transferred the Attorney General pursuant to 18 U.S.C. § 4241, the Attorney General retains that legal custody until the

66

defendant becomes mentally competent to stand trial or "the pending charges against him are disposed of according to law; whichever is earlier." *Id.* § 4241(d). In my view, *Wayda*'s concept of legitimate custody and its extension to the internal deadlines of 4241(d) are inconsistent with the Supreme Court's approach to a similar question in *Montalvo-Murillo*. Because there are avenues of relief available to defendants who believe they have been detained for an unreasonable period of time during the process, I see no reason to stretch the language of the statute in order to address problems that are better remedied in the traditional ways I mentioned above.